UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Margaret Almazan, et al.,

                          Plaintiffs,

         –v–                                              14-cv-311 (AJN)

Tracy Almazan, et al.,                                   MEMORANDUM &
                                                         ORDER
                          Defendants.

ALISON J. NATHAN, District Judge:

    This case is an intra-family dispute regarding the purchase and sale of various residential

properties in and around New York City.  Plaintiffs Margaret Almazan and her husband, Ruben

Almazan (collectively "Plaintiffs"), bring a number of claims against their daughter, Tracy

Almazan, and her wife, Jennifer Almazan (collectively "Defendants"), including two claims each

for breach of contract and fraud, and additional claims for unjust enrichment, money had and

received, constructive trust, fraudulent concealment, breach of fiduciary duty, and a claim for an

accounting.

    The Defendants now move to dismiss the Plaintiffs' amended complaint for failure to

state a claim under Federal Rules of Civil Procedure 9(b) and 12(b)(6).  For the reasons below,

their motion is granted in part and denied in part.

## I.      BACKGROUND

    Under more typical circumstances, the facts of this case would describe nothing more

than a routine commercial dispute between parties to a real estate transaction.  Unfortunately, the

present action concerns a dispute that has set parent against child and vice-versa.

1

In 2004, Margaret Almazan gave $315,000 to her daughter Tracy in order to assist her with the purchase of her first home. Am. Compl. ¶ 14. The Plaintiffs allege that this sum was advanced to Tracy with the understanding that their names would be listed on the shares of the cooperative and proprietary lease of the apartment to be purchased, located at 160 26th Street, New York, New York (the "26th Street Property"). Am. Compl. ¶¶ 14-15. The reason Plaintiffs insisted on having their names listed on the shares of the cooperative was to ensure that they would be repaid their $315,000 in the event that the 26th Street Property was ever sold. *Id.* ¶ 16. They insist that at no time did they or their daughter understand this money to be a gift. *Id.* ¶¶ 17-18.

The closing for the 26th Street Property occurred on February 19, 2004. *Id.* ¶ 20. At the closing the Plaintiffs believed their daughter, a New York-licensed lawyer specializing in real estate transactions, to be acting as their attorney. *Id.* ¶¶ 13, 21. In support of this belief, the Plaintiffs note a February 13, 2004 fax concerning the transaction sent from the Law Offices of Bryan W. Kishner & Associates, Tracy's then-employer, to the legal counsel for Daniel Ferguson, the seller of the 26th Street Property. Am. Compl. ¶¶ 22, 25; Pls.' Ex. A. The Plaintiffs further contend that Tracy drafted the Preliminary Closing Statement for the transaction and forwarded a fax of that document to Margaret on February 17, 2004. Am. Compl. ¶¶ 26-28; Pls.'s Ex. B. There is no dispute that the Plaintiffs' names were ultimately listed on the shares of the cooperative. *Id.* ¶ 32.

For approximately eighteen months, between the close of the transaction and July 2005, Tracy resided at the 26th Street Property. Tracy Almazan Aff. ¶ 10 ("Tracy Affidavit"). During this period Tracy met her future wife, Jennifer Ellard. They first met in July 2004 and were married by a minister in November 2004. *Id.* ¶ 5. Because Tracy and Jennifer wished to

conceive a child, Tracy determined that she would sell the 26th Street Property in order to purchase a larger apartment for herself, Jennifer, and any children they hoped to have. *Id.* ¶¶ 12-13. Accordingly, on July 20, 2005, Tracy and the Plaintiffs sold the 26th Street Property for $450,000. Am. Compl. ¶ 33.

The Plaintiffs again allege that they believed Tracy to be acting as their agent and their attorney during the course of the sale. *Id.* ¶¶ 34-35. Specifically, they believed Tracy to be acting on Margaret's behalf by virtue of a power of attorney agreement executed in 2004. *Id.* ¶¶ 29, 34-35. Tracy acknowledges that, during the closing for the sale of the 26th Street Property in 2005, she was acting with power of attorney for her parents, but insists that her power of attorney was strictly limited to that particular transaction. Tracy Aff. ¶ 14.

After the sale of the 26th Street Property, Tracy represented to her parents that the transaction had resulted in net proceeds of $70,000. Am. Compl. ¶ 37. The Plaintiffs authorized Tracy to use the funds generated by the sale, including the net proceeds, to purchase another cooperative apartment located at 65 Morton Street, New York, New York (the "Morton Street Property"). *Id.* ¶ 38. In June 2005, using the proceeds from the sale and a loan she obtained independently, Tracy purchased the Morton Street Property.[1] *Id.* ¶¶ 39-40. The Plaintiffs never received any proceeds from the sale of the 26th Street Property, but instead allegedly asked that, as a condition for using their share of proceeds to help purchase the new property, Margaret's name again be put on the title for the Morton Street Property. *Id.* ¶¶ 41, 43. Plaintiffs allege that Tracy agreed to put her mother's name on the title, but in fact never did so, instead placing her new wife's name on the title instead. *Id.* ¶¶ 44-46. As the Defendants explain it, however, the

---

[1] The Court is not sure how Tracy was able to reinvest proceeds from the sale of the 26th Street Property, which occurred in July 2005, in the purchase of the Morton Street Property, which occurred in June 2005. Nonetheless, the Court must construe all factual pleadings in a light most favorable to the non-moving party.

Morton Street Property was purchased with a mixture of Jennifer's separate contribution, proceeds from the sale of the 26th Street Property, and a mortgage. Tracy Aff. ¶ 16. Jennifer's name was put on the title in light of the fact that she and Tracy submitted a mortgage application as joint tenants with rights of survivorship, in addition to a joint co-op application. *Id.* ¶ 16. The Defendants lived in the Morton Street Property until May 2013. *Id.* ¶ 17.

In 2011, Jennifer and Tracy were remarried in New York State after the state's ratification of same-sex marriage. *Id.* ¶ 5. In September 2011, Tracy's wife Jennifer gave birth to their daughter, Eliza Almazan. *Id.* In June 2013, the Defendants sold the Morton Street Property for $1,075,000. Am. Compl. ¶ 55. The Plaintiffs allege that, in connection with the sale of that property, Tracy represented to them that they were not required to attend the closing because Tracy held power of attorney for Margaret and would represent her interests. *Id.* ¶ 56. The Plaintiffs explain that this was one example of Tracy's now eight-year long scheme to conceal the fact that her mother's name was never put on the title to the Morton Street Property. *Id.* ¶ 57.

The Defendants sold the Morton Street Property in order to facilitate the purchase of a new residence outside of New York City. *Id.* ¶ 60; Tracy Aff. ¶ 18. On July 2, 2013, the Defendants purchased real property at 18 Sunset Terrace, Maplewood, New Jersey (the "Sunset Terrace Property") for $525,000. *Id.* ¶¶ 63, 65. The Sunset Terrace Property was purchased with funds from the sale of the Morton Street Property, which Margaret believed to have been held jointly in her name. *Id.* ¶¶ 66-67.

The Plaintiffs again allege that, prior to the closing on the Sunset Terrace Property, Tracy represented to them that Margaret's name would be put on the title and that Tracy would act as her agent and attorney during the purchase of the property. *Id.* ¶¶ 60-62, 69-73. The Plaintiffs

believe that these representations were calculated to keep them uninformed of the fact that Margaret's name was never put on the title to the Morton Street Property and would never be put on the title to the Sunset Terrace Property. *Id.* ¶ 74.

After the closing on the Sunset Terrace Property in July 2013, the relationship between mother and daughter fell apart and became deeply acrimonious. The Plaintiffs' version of events is that Margaret confronted Tracy regarding whether her name was ever placed on the title to any of the properties and that Tracy refused to provide her an answer. *Id.* ¶ 75. According to the Plaintiffs, at some later date Tracy agreed to take out a mortgage on the Sunset Terrace Property in order to pay back her mother $250,000. *Id.* ¶¶ 76-77, Pls.' Exs. E, D. On July 16, 2013, the Plaintiffs sent Tracy an email requesting that she pay them the $250,000 and return any letters regarding power of attorney, any closing statements, and the titles of any relevant properties. Pls.' Ex. E. In response, Tracy sent the Plaintiffs an email on July 17, 2013 stating "I will get a mortgage of $250,000.00 on the new house and deliver the funds to both Margaret Almazan and Ruben Almazan if that is what she now wants." Pls.' Ex. F. With no payment forthcoming, on October 22, 2013, Margaret sent Tracy a letter demanding payment of $315,000, the original sum given to Tracy for purchase of the 26th Street Property in 2004. Pls.' Ex. H.

The Defendants put forward a materially different chain of events. First, they insist that the Plaintiffs never asked for Margaret's name to be put on the title to the Morton Street Property and never conditioned Tracy's use of the proceeds from the sale of the 26th Street Property. Tracy Aff. ¶¶ 15-16. Moreover, they explain that the Plaintiffs were never involved in the sale of the Morton Street Property or the purchase of the Sunset Terrace Property. Rather, the night before the closing of the Sunset Terrace Property, Tracy alleges that she received a panicked phone call from her mother insisting that her name be put on the title. Tracy Aff. ¶ 22. Margaret

threatened that if her name was not put on the title, she would cut off all communication with her daughter. *Id.* Margaret insisted that her name be put on the title in order to protect her daughter from Jennifer, who she feared would divorce Tracy and deny her access to her daughter Eliza, who was biologically Jennifer's child. *Id.* Tracy insists that at no time during this conversation did she agree to put Margaret's name on the title and that she and Jennifer closed on the property the next day. *Id.* ¶¶ 22-23.

Tracy goes on to detail a series of rancorous conversations with her mother over the subsequent months. During this time, Tracy alleges that her mother suffered a psychotic episode, that her father pleaded with her to seek her mother's forgiveness in order to restore peace within the family, and that she offered the $250,000 "repayment" as a gesture of goodwill, rather than as consideration for any loan. *Id.* ¶¶ 24-28. The Plaintiffs deny any such episodes. Ruben Almazan Aff. ¶ 7 ("Ruben Affidavit"); Margaret Aff. ¶ 4.

After this unfortunate chain of events, Plaintiffs brought suit against their daughter and daughter-in-law on January 14, 2014. *See* Dkt. No. 1. On March 24, 2014, the Defendants moved to dismiss the complaint. *See* Dkt. No. 10. In light of that motion, Plaintiffs amended their complaint on April 10, 2014. *See* Dkt. No. 18. Defendants again moved to dismiss the complaint on May 2, 2014. *See* Dkt. No. 24.

## II.   LEGAL STANDARDS

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a plaintiff's complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). For purposes of the motion to

dismiss, all of the "factual allegations contained in the complaint" must be "accepted as true." *Id.*

at 572. Though these allegations need not be "detailed," they must "state a claim to relief that is

plausible on its face." *Id.* at 555. A complaint is facially plausible "when the pleaded factual

content allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2007).

On a Rule 12(b)(6) motion, a district court may consider "the complaint, documents

attached to the complaint as exhibits, and documents incorporated by reference in the complaint.

Where a document is not incorporated by reference, the court may nevertheless consider it where

the complaint 'relies heavily upon its terms and effect,' thereby rendering the document

'integral' to the complaint." *DiFalco v. MSNBC Cable, LLC,* 622 F.3d 104, 111 (2d Cir. 2010)

(quoting *Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir. 2006)).

## III.   DISCUSSION

### a.   Breach of Contract

The Plaintiffs' first two claims are for breach of contract.  The first claim concerns the

$385,000–the $315,000 initial disbursement plus the $70,000 in net proceeds from the sale of the

26th Street property–that the Plaintiffs allegedly gave Tracy in consideration for having

Margaret's name placed upon the title to the Morton Street Property.  Am. Compl. ¶¶ 84-90.  The

second claim concerns the same sums, plus Margaret's share of any proceeds from the sale of the

Morton Street Property, given to Tracy in consideration for having Margaret's name put on the

title to the Sunset Terrace Property.  Am. Compl. ¶¶ 91-97.

"Under New York law, there are four elements to a breach of contract claim: (1) the

existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach

of contract by the defendant, and (4) damages." *Ellington Credit Fund, Ltd. v. Select Portfolio*

*Servicing, Inc.*, 837 F. Supp. 2d 162, 188-89 (S.D.N.Y. 2011) (citing *Harsco Corp. v. Segui,* 91 F.3d 337, 348 (2d Cir. 1996)). *See also* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1235. To plead these elements "a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue." *Wolff v. Rare Medium, Inc.,* 171 F.Supp.2d 354, 358 (S.D.N.Y. 2001) (dismissing breach of contract claim because plaintiffs failed to identify the contractual provisions that defendant breached). Moreover, "[s]tating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract." *Berman v. Sugo L.L.C.,* 580 F.Supp.2d 191, 202 (S.D.N.Y. 2008) (citing *Posner v. Minn. Mining & Mfg. Co.,* 713 F.Supp. 562, 563–64 (E.D.N.Y. 1989)). The Defendants allege that the Plaintiffs have failed to establish the first of these elements, the existence of a contract, and also take the position that, if any contract were to exist, its enforcement would be barred by both the Statute of Frauds and the statute of limitations. The Court agrees that Plaintiffs' amended complaint fails to establish the existence of an agreement.

In a recent case before the Second Circuit, the appeals court noted the deficiency of a tortious interference with contract complaint that merely alleged that the plaintiff "had a long-standing agreement with [the Defendant] to produce shoes for Defendant and other customers." *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 F. App'x 102, 104 (2d Cir. 2012). The Second Circuit explained that such an allegation alone is "insufficient to plausibly plead the existence of a contractual relationship." *Id.* The plaintiff in that case attempted to remedy their pleadings by providing greater detail about the terms of the contract, alleging that "[t]he long-standing overarching contract with [Defendant] was that it would produce whatever shoes [plaintiff] ordered for Defendant and other customers" and that the

"contract has been renewed by [Defendant's] performance season-after-season, year-after-year, for twenty-five years." *Id.*

Although the plaintiff's amended complaint in *Valley Lane* further fleshed out the details of the putative contract, the appeals court affirmed a lower court's dismissal because the amended complaint still failed to provide "additional factual details regarding, *inter alia*, the formation of the contract, the date it took place, and the contract's major terms." *Id.* Accordingly, the plaintiff had again failed to "sufficiently plead the existence of a contract." *Id.*

The Plaintiffs' amended complaint here suffers from the same basic deficiency of the pleadings in *Valley Lane*. Simply put, the amended complaint falls woefully short of providing the detail necessary to establish the existence of a contract. While a plaintiff "need not attach a copy of the contract to the complaint or quote the contractual provisions verbatim . . . the complaint must at least set forth the terms of the agreement upon which liability is predicated . . . by express reference." *Howell v. Am. Airlines, Inc.*, 05-cv-3628 (SLT), 2006 WL 3681144, at *3 (E.D.N.Y. Dec. 11, 2006) (citing *Mayes v. Local 106, Int'l Union of Operating Eng'rs,* 739 F.Supp. 744, 748 (N.D.N.Y. 1990)). The amended complaint provides only the most skeletal detail of the purported contract. It describes a contract occurring sometime in early 2004, whereby the Plaintiffs transferred $315,000 to their daughter "with the understanding" that their names were to be listed on the shares of the cooperative on 26th Street. Am. Compl. ¶ 15.

Most glaringly, the pleadings fail to describe the terms of the contract that are ultimately at issue in this case. It is altogether unclear what the "contract" anticipated regarding the sale of the 26th Street Property and the disposition of any funds from that sale. The Court is unable to determine whether the putative agreement reached between Tracy and her parents anticipated her sale of the 26th Street Property and placed specific conditions on the use of any proceeds, *or*

whether the parties engaged in a series of *ad hoc* contracts over the years wherein the Plaintiffs exchanged their stake in Tracy's properties for her guarantee to keep her mother's name on the deeds to each property.

Plaintiffs' pleadings provide no clarity on this point. On the one hand, parts of the amended complaint and the Plaintiffs' opposition describe a contract where the initial sum was given as consideration for Tracy's obligation to put her mother's name on any property purchased with funds stemming from that initial sum. *Id.* ¶¶ 88, 93, 95, 137; Opp. 5. Other portions describe a series of discrete negotiations occurring before each property transaction, with Tracy and her parents agreeing that she could reinvest their stake in the previous property, so long as it was reinvested in a new property with Margaret listed as a co-owner. Am. Compl. ¶¶ 62, 70, 86, 114, 117, 136. Still other portions describe a simple loan to Tracy (although its terms are entirely opaque) that she was excused from making payments on so long as the principal was invested in a property with Margaret's name on the title. *Id.* ¶¶ 16, 42, 115. These descriptions of the contractual relationship between Tracy and her parents are inconsistent and it is impossible to discern not only whether the Plaintiffs are alleging the existence of a single contract or a series of contracts, but also the essential terms actually at dispute in this case.

The Plaintiffs' motion papers and its supporting affidavits are similarly ambiguous. They describe a single agreement that existed between Tracy and Plaintiffs that was "carried on" to the other properties. Opp. 5. This "continuing agreement" apparently "encompassed placing Margaret's name on each subsequent property purchased after the 26th Street Property." *Id.* However, despite the existence of this "continuing agreement," Margaret Almazan's affidavit separately explains that she and her daughter, after the sale the 26th Street Property, reached an accord that Tracy should "reinvest the funds and [] keep [Margaret's] name on the title."

Margaret Almazan Aff. ¶ 7 ("Margaret Affidavit").  She further explains that "[e]very time [Tracy] closes on a property, she told me she would place my name on the title to the properties." *Id.* ¶ 8.  Even Ruben Almazan, ostensibly a party to this contract, seems confused as to its contents, stating that "I discussed *with Margaret* that this agreement carried over and was repeated when Tracy moved from one residence to another.  It was my understanding *based upon the communications that Margaret had with Tracy* that this agreement continued to be in effect until Tracy decided not to honor the agreement in July, 2013."  Ruben Aff. ¶ 3 (emphasis added).  Moreover, he recalls that they "trusted Tracy would honor our agreement and place our names on the title to any subsequent property.  I recall discussing title with Tracy on the telephone, as it was something that Margaret was concerned about after [sic] 26th Street Property was sold.  *Tracy agreed to place our names on title to the properties purchased after the 26th Street Property was sold.*"  *Id.* ¶ 4 (emphasis added).  Mr. Almazan sums up the confusion in this case where he explains that he felt each property was "subject to the continuing agreement that we had made *and repeated* over the years."  *Id.* ¶ 5 (emphasis added).  Indeed, although Plaintiffs' opposition insists that the parties reached a single agreement that "encompassed placing Margaret's name on each subsequent property purchased after the 26th Street Property," Opp. 5, Plaintiffs nonetheless bring *two* breach of contract claims describing *two separate* agreements between Tracy and her parents.

It is clear that Tracy's parents forwarded her $315,000 in 2004 to help purchase her first home and that Tracy assented to her parents' names being on the title to the 26th Street Property. This can be readily discerned from the shares and tax documents for that property.  Tracy Aff., Exs. A & B.  Everything beyond that point in the Plaintiffs' amended complaint is lost in the haze of familial recrimination.  The Plaintiffs fail to explain whether the parties contemplated, in

2004, (1) who would be entitled to the proceeds from any sale of the 26th Street Property, (2) what those proceeds could be used for, (3) whether their use carried forward an obligation on Tracy's part to include her mother's name on any future property she purchased, (4) whether this obligation was to carry on *ad infinitum* or to terminate after a certain number of years or properties purchased, or (5) whether Tracy could relieve herself of this obligation by paying back the initial sum as a loan.

Accordingly, the Plaintiffs have "fail[ed] to provide any facts about how this contract [or any of the possible contracts] was formed, the date of formation, the consideration, or the contract's major terms." *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 651 F. Supp. 2d 155, 184 (S.D.N.Y. 2009). Most importantly, they have failed to "allege the essential terms of the parties' purported contract in nonconclusory language, including the specific provisions of the contract upon which liability is predicated." *Childers v. New York & Presbyterian Hosp.*, 13-cv-5414 (LGS), 2014 WL 2815676, at *16 (S.D.N.Y. June 23, 2014). *See also Howell*, 2006 WL 3681144, at *3. Plaintiffs have therefore failed to state a claim for breach of contract.

The Plaintiffs' failure to adequately establish the existence of the contract is made all the more clear when attempting to determine whether or not such a contract is barred by New York's Statute of Frauds, which requires a contract to be reduced to writing if "[b]y its terms [it] is not to be performed within one year from the making thereof." N.Y. GOL § 5–701(a)(1). New York courts have "long interpreted this provision of the Statute of Frauds to encompass only those contracts which, by their terms, have absolutely no possibility in fact and law of full performance within one year . . . As long as the agreement may be fairly and reasonably interpreted such that it may be performed within a year, the Statute of Frauds will not act as a bar however

unexpected, unlikely, or even improbable that such performance will occur during that time frame." *Cron v. Hargro Fabrics, Inc.*, 91 N.Y.2d 362, 366 (1998) (internal citations and quotations omitted). *See also GB Marketing USA Inc. v. Gerolsteiner Brunnen GmbH & Co.*, 782 F.Supp. 763, 777 (W.D.N.Y. 1991) ("The fact that an alleged oral contract in fact lasted more than one year does not mean that it violated the Statute of Frauds, so long as nothing in its terms barred performance within a year") (citing cases).

New York courts have generally held that an oral loan, even without a determinate or specified maturity date, does not fall within the Statute of Frauds because the debtor *could* repay the loan within a year. *See Cohan v. Movtady*, 751 F. Supp. 2d 436, 442 (E.D.N.Y. 2010) (citing *Rosbach v. Indus. Trading Co.*, 81 F.Supp.2d 522, 526 (S.D.N.Y.2000)). Similarly, at least one court has concluded that an oral agreement between business partners, agreed to last "as long as the ventured stayed alive," does not fall within the Statute of Frauds, despite being "open-ended," because the business could have potentially failed within a year. *See Klagsbrun v. Ross*, 93-cv-7709 (MBM), 1995 WL 43664, at *5 (S.D.N.Y. Feb. 3, 1995). *See also Middle Island Landscaping & Contracting v. Martin*, 33 Misc. 3d 1229(A) (N.Y. Co. Ct. 2011) ("However, open-ended agreements with no set time for repayment do not violate the Statute of Frauds."). However, oral contracts creating an obligation that lasts in perpetuity are considered incapable of performance within one year. *See Melwani v. Jain*, 281 A.D.2d 276, 276, 722 N.Y.S.2d 145, 146 (N.Y. App. Div. 2001).

The opacity of the contract described by the Plaintiffs effectively renders this question unanswerable. If the contract is construed to be an exchange of $315,000 in return for Tracy's promise to put her mother's name on the title of any property she ever purchases, *ad infinitum*, that sort of perpetual obligation would be unenforceable under the Statute of Frauds.

Conversely, to the extent the contract was simply a loan or a series of distinct transactions, reducing the agreements to writing would not be required.

Plaintiffs argue that the question can be resolved by reference to Tracy's partial performance. It is the case that "partial performance removes an oral agreement from the operation of the statute of frauds where . . . the plaintiffs' actions are unequivocally referable to the alleged oral agreement." *Last Time Beverage Corp. v. F & V Distribution Co., LLC*, 98 A.D.3d 947, 952 (N.Y. App. Div. 2012) (internal quotations omitted). "Where the possibility of other reasons for the conduct exists, the performance is equivocal . . . This means, the action taken must be unintelligible or at least extraordinary, explainable only with reference to the oral agreement." *Capital One Nat. Ass'n v. 48-52 Franklin, LLC*, 12-cv-3366 (LGS), 2014 WL 1386609, at *7 (S.D.N.Y. Apr. 8, 2014) (internal quotations omitted).

Tracy's conduct is not, however, *unequivocally* referable to the alleged oral agreement described by Plaintiffs, even when every inference is drawn in their favor. *See, e.g.*, *Stephen Pevner, Inc. v. Ensler*, 309 A.D.2d 722, 722-23 (N.Y. App. Div. 2003) (affirming dismissal of oral contract claim where plaintiff's pleadings of partial performance failed to adequately allege that the defendant's conduct was unequivocally referable to the contract); *Brown v. Brown*, 12 A.D.3d 176, 176 (N.Y. App. Div. 2004) (same).  Accepting the $315,000 from her parents and putting their names on the 26th Street Property is not "explainable only with reference to the oral agreement."  Rather, this conduct could be construed as a gift, with Tracy's parents purchasing the property in their name, but allowing her to live there without charge. *See Alayoff v. Alayoff*, 112 A.D.3d 564, 566 (N.Y. App. Div. 2013) ("Moreover, the defendant's act of allowing the plaintiff to live in the apartment rent—and maintenance-free, and his seeming willingness to transfer the interest in the apartment if she was able to obtain employment and pay the

maintenance, is not likely unequivocally referable to the alleged oral agreement, but, rather, might reasonably be explained by other factors, such as the parties' familial relationship."). Similarly, Tracy's conduct could also be explained as relating solely to a more limited agreement that did not envision "carrying on" Tracy's obligations to subsequent properties.  In sum, Plaintiffs' failure to allege partial performance unequivocally related to the oral contract simply reinforces the fact that the alleged contract at issue here is indecipherably opaque – it is not clear what "unequivocally related" partial performance would even look like in this case.

The lack of clarity in the Plaintiffs' pleadings similarly frustrates analysis of the statute of limitations in this case, because it is unclear if the Plaintiffs are suing under the theory that the parties agreed to a 2004 contract, first breached in 2005, or a series of contracts, the latest of which was consummated, and breached, in 2013.  In New York, a breach of contract claim must be brought within six years of when the claim first accrues.  N.Y. C.P.L.R. S. 213(2).  The claim accrues when the contract is first breached.  *See T & N PLC v. Fred S. James & Co. of NY, Inc.*, 29 F.3d 57, 59 (2d Cir. 1994).  Because the statute of limitations provides an affirmative defense, the Defendants carry the burden of demonstrating that the claim is untimely and accordingly "[d]ismissing claims on statute of limitations grounds at the complaint stage is appropriate only if a complaint clearly shows the claim is out of time." *Smith v. City of New York*, 1 F.Supp.3d 114, 118 (S.D.N.Y. 2013) (internal quotation removed).  Because it is not clear from the complaint that the claim is out of time, dismissal on these grounds is inappropriate at this stage. Nonetheless, Plaintiffs' breach of contract claims must still be dismissed for failure to state a claim.

    b.    **Fraud and Fraudulent Concealment**

"To prevail on a claim of common law fraud in New York, a plaintiff must show (1) a false representation of material fact, (2) an intent to defraud, and (3) reliance." *Filler v. Hanvit Bank*, 156 F. App'x 413, 416 (2d Cir. 2005). The elements for fraudulent concealment are similar and require "(1) that the defendant failed to meet its duty to disclose [a material fact], (2) that the defendant had an intent to defraud or scienter, (3) there was reliance on the part of the plaintiff, and (4) damages." *In re Ridley*, 453 B.R. 58, 70 (Bankr. E.D.N.Y. 2011) (quoting *Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 152 (2d Cir. 1993)).

Such claims are subject to the heightened pleading requirements of Rule 9(b), *Filler*, 156 App'x at 415, which requires parties to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) is intended to guard against "improvident charges of wrongdoing." *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1127 (2d Cir. 1994) (quoting *O'Brien v. National Property Analysts Partners,* 936 F.2d 674, 676 (2d Cir. 1991)). Accordingly, plaintiffs may not "base claims of fraud on speculation and conclusory allegations." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990). Rather, "plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Shields,* 25 F.3d at 1128; *accord Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993). This strong inference "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *380544 Canada, Inc. v. Aspen Tech., Inc.*, 544 F. Supp. 2d 199, 217 (S.D.N.Y. 2008). Plaintiffs' barebones pleadings regarding Tracy's state of mind fall far short of what is required under Rule 9(b)'s heightened requirements.

In regards to their first cause of action for fraud, concerning the purchase and sale of the Morton Street Property, Plaintiffs provide little more than the allegation that (1) Tracy told Margaret her name would be on the property's title and (2) that Tracy never put Margaret's name on the title. Am. Compl. ¶¶ 124-127.  When a plaintiff relies on such misstatements, they must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000) (quoting *Shields,* 25 F.3d at 1128) (internal quotations removed)).  Although they specify the individuals involved and the allegedly fraudulent statements, they provide no further detail or facts to create a strong inference of fraudulent intent at least as strong as any opposing inference.  *See Saltz v. First Frontier, L.P.*, 485 F. App'x 461, 464 (2d Cir. 2012) ("the complaint fails to allege any facts which would lead a reasonable person to deem the inference of scienter to be at least as strong as any opposing inference").  *See also Forrest v. Unifund Fin. Grp., Inc.*, 04-cv-5151 (LTS), 2005 WL 1087490, at *4 (S.D.N.Y. May 6, 2005) (although the complaint specified four allegedly fraudulent statements, plaintiffs failed to describe "when, where, or even by what means each was made.").

Plaintiffs raise two other pieces of trivia as evidence of scienter.  First they note that Tracy informed Margaret that the "net proceeds" from the sale of the 26th Street Property were $70,000 when the property sold for a sum of $450,000. Am. Compl. ¶ 37.  But it is entirely unclear how this statement was fraudulent or indicates scienter.  The total consideration paid by the Almazan's for the 26th Street Property in 2004 was $315,000.  Tracy Aff., Ex. B at 2. Accordingly, there was a difference of $135,000 between the purchase price in early 2004 and the selling price in 2005.  But Plaintiffs do not allege that Tracy misrepresented this sum to her

mother.  *See* Am. Compl. ¶ 37.  That $135,000 and $70,000 are different sums is plain, but

nowhere do Plaintiffs actually allege that the $65,000 difference is best accounted for due to

some fraud by Tracy.  Whether the difference may be accounted for due to transaction costs,

upgrades to the property, or some other familial arrangement is irrelevant.  What is significant is

that the Plaintiffs have adduced absolutely no specific facts to support the inference that Tracy

was acting with fraudulent intent when informing her parents that the net proceeds on the sale

were $70,000.

Second, Plaintiffs highlight the fact that Tracy allegedly told her parents that they did not

need to personally attend the closing for either the purchase or sale of the Morton Street

Property, revealing her intent to keep them uninformed of the fact that their names were not on

the title.  *See* Am. Compl. ¶¶ 48, 56.  But this ignores the fact that Tracy and her parents

similarly agreed that they did not need to attend the closing for either the purchase or sale of the

26th Street Property, the property for which it is undisputed that the Plaintiffs were listed as

owners.  Am. Compl. ¶¶ 21, 36.  Even drawing all inferences in Plaintiffs' favor, little, if

anything, can be drawn from the fact that the Plaintiffs were similarly uninvolved in the Morton

Street Property transactions.

The second claim for fraud is in regards to the purchase of the Sunset Terrace Property.

Again, Plaintiffs provide nothing more than the allegation that (1) Tracy said she would

Margaret's name on the title to the property and (2) Tracy never put Margaret's name on the title.

*See* Am. Compl. ¶¶ 124-127.  Accordingly, this claim fails for the reasons above.

Finally, Plaintiffs' claim for fraudulent concealment is based on the theory that Tracy

served as Margaret's attorney and thus owed her a fiduciary duty.  Regardless of whether or not

this is true, Plaintiffs' allegations regarding scienter on this count are entirely cumulative of the previous two fraud claims, and thus also fails for the same reasons.

In sum, Plaintiffs neither describe a "personal concrete benefit[]" that Tracy stood to gain through her misrepresentations, *Marcus v. Frome*, 329 F. Supp. 2d 464, 473 (S.D.N.Y. 2004), nor do they provide strong circumstantial evidence of conscious misbehavior or recklessness. Rather, Plaintiffs offer nothing more than conclusory allegations regarding Tracy's alleged intent to defraud. Accordingly, each of their fraud-based claims must fail.

### c.      Breach of a Fiduciary Duty, Accounting, and Constructive Trust

Plaintiffs also bring claims for breach of a fiduciary duty, accounting, and constructive trust. Each of these claims presupposes the existence of a fiduciary relationship between the Plaintiffs and Tracy. Because Plaintiffs have inadequately pled the existence of such a relationship, all three claims must be dismissed.

The elements for breach of fiduciary duty are "(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Rut v. Young Adult Inst., Inc.*, 74 A.D.3d 776, 777 (N.Y. App. Div. 2010) (quoting *Kurtzman v. Bergstol*, 40 A.D.3d 588, 590 (N.Y. App. Div. 2007)). In regards to the first element, the parties dispute the existence of a fiduciary relationship between Tracy and her parents. The Plaintiffs contend that one existed by virtue of the fact that they believed Tracy to be their attorney and to have been acting on their behalf during all of the relevant transactions. *See* Am. Compl. ¶¶ 21, 29, 34-35, 48-50, 56, 58-59, 69, 72. Tracy contends that, because her parents did not want to physically attend the sale of the 26th Street Property, they executed a limited Power of Attorney permitting her to sign documents for them in relation to the sale of the

26th Street Property only.  Tracy Aff. ¶ 13.  She insists that at no other point did she serve as their attorney or exercise Power of Attorney for her parents.  *Id.* ¶ 14.

Although the Court must construe the facts at this stage in a light most favorable to the Plaintiffs, they have nonetheless failed to adequately plead an attorney-client relationship spanning the nine-year course of events described in their complaint and covering every single one of the real estate transactions involved.  The Plaintiffs have done nothing more than make a "bare allegation of the existence of an attorney-client relationship," but have otherwise "failed to allege specific facts upon which the existence of an attorney-client relationship or privity between [the] parties could be inferred."  *Parekh v. Cain*, 948 N.Y.S.2d 72, 77 (N.Y. App. Div. 2012).  *See also Goldfarb v. Schwartz*, 26 A.D.3d 462, 463 (N.Y. App. Div. 2006) (noting that plaintiff must plead "specific facts" to establish the existence of an attorney-client relationship).  Although Tracy herself acknowledges that a limited attorney-client relationship existed around the time the parties sold the 26th Street Property in 2005, the Plaintiffs provide no other facts regarding the nature of the relationship, including whether or not it was to last indefinitely, whether it pertained uniquely to real estate transactions, and whether Tracy would be compensated for her legal work.  *See Alston v. Stone*, 02-cv-5338 (RPP), 2005 WL 668395, at *8 (S.D.N.Y. Mar. 21, 2005).  As with their allegations regarding breach of contract, Plaintiffs fail to detail whether Tracy was on permanent retainer or whether they engaged her services separately each time she opted to sell one of the properties.  Plaintiffs' rote incantations that they believed Tracy to be their lawyer are inadequate, notwithstanding Tracy's acknowledgment of her limited representation in 2005.  Simply including "perfunctory statements" in the complaint that Tracy's "representation continued in some unspecified capacity" is insufficient where "there

are no allegations as to the substance of those representations." *In re Magnesium Corp. of Am.*, 399 B.R. 722, 749-50 (Bankr. S.D.N.Y. 2009).

Moreover, it is axiomatic that the "[m]ere reposal of one's trust or confidence in a party . . . does not automatically create a fiduciary relationship; the trust or confidence must be accepted as well." *Qube Films Ltd. V. Paddell*, 13-cv-8405, 2014 U.S. Dist. LEXIS 111595, at *14 (S.D.N.Y. 2014) (quoting *Thermal Imaging, Inc. v. Sandgrain Secs., Inc.*, 158 F. Supp. 2d 335, 343 (S.D.N.Y. 2001)). Accordingly, the fact that the Plaintiffs felt Tracy to be their lawyer and entrusted her with certain information and responsibilities is insufficient to establish the creation of an attorney-client relationship. *See Kubin v. Miller*, 801 F. Supp. 1101, 1114-15 (S.D.N.Y. 1992) (fact that plaintiff "always believed [defendant] was his own lawyer, and, consequently, [] shared confidential information" with him was insufficient to establish existence of a fiduciary relationship). The Plaintiffs' complaint provides no specific facts indicating that Tracy accepted reposal of her parents' trust over such a long span of time and over numerous, distinct real estate transactions. Therefore, even "affording the amended complaint a liberal construction, accepting the facts alleged therein as true, and according the plaintiff the benefit of every possible favorable inference, the amended complaint fails to plead specific facts from which the existence of an attorney-client relationship" can be ascertained. *Fredriksen v. Fredriksen*, 30 A.D.3d 370, 371-72 (N.Y. App. Div. 2006).[2]

Beyond any professional attorney-client relationship, the familial relationship between the Plaintiffs and Tracy is insufficient, on its own, to establish that a fiduciary relationship

---

[2] The Plaintiffs' complaint fails to adequately allege the existence of any form of attorney-client relationship. However, even if the Court were to accept the existence of a limited attorney client relationship in 2005 regarding the sale of the 26th Street Property, as suggested by Tracy Almazan's affidavit, a breach of fiduciary duty claim based on that relationship would be time barred. *See In re Magnesium Corp. of Am.*, 399 B.R. at 748-49 (noting that when a claim for breach of fiduciary duty is for compensatory damages, the statute of limitations is three years). *See also* N.Y. C.P.L.R. 214(6).

existed. While courts have inferred fiduciary relationships based on familial bond in particular

instances, *see, e.g.*, *Braddock v. Braddock*, 60 A.D.3d 84, 88 (N.Y. App. Div. 2009) (concluding

that "[f]amily members stand in a fiduciary relationship toward one another in a co-owned

business venture"), they generally do not accept the premise that familial bond, alone, is

sufficient. *See, e.g.*, *United States v. Chestman*, 947 F.2d 551, 568 (2d Cir. 1991) (concluding

that "marriage does not, without more, create a fiduciary relationship . . . [a]lthough spouses

certainly may by their conduct become fiduciaries, the marriage relationship alone does not

impose fiduciary status"); *McCaffery v. McCaffery*, 11-cv-703 (DRH) (WDW), 2012 WL

3260299, at *4 (E.D.N.Y. Aug. 8, 2012) (noting that a sibling relationship, standing alone, does

not impose a fiduciary relationship); *Bice v. Robb*, 07-cv-2214 (PAC), 2012 WL 762168, at *7

(S.D.N.Y. Mar. 9, 2012) *aff'd*, 511 F. App'x 108 (2d Cir. 2013) (no fiduciary relationship existed

between father and son who engaged in arm's length transaction); G.G. Bogert, The Law Of

Trusts And Trustees § 482 ("Mere kinship alone, however does not itself establish a confidential

relationship."). While a familial relationship often results in one party reposing confidence and

trust in the other, the Plaintiffs have not provided additional facts suggesting that such

confidence and repose existed here.

The absence of such a relationship is fatal to Plaintiffs' claims for an accounting and for a

constructive trust, both of which require the existence of a fiduciary relationship.[3] Simply stated,

a party "may not maintain an action for an accounting against plaintiff if the parties enjoyed

---

[3] An action for an accounting requires "(1) a fiduciary or confidential relationship; (2) the entrustment of money or property to the defendant; (3) the absence of an adequate remedy at law; and (4) in some cases, a demand for an accounting and a refusal." *Nuss v. Sabad*, 976 F. Supp. 2d 231, 248 (N.D.N.Y. 2013). Similarly, under New York law, "the equitable remedy of a constructive trust is appropriate when there is clear and convincing evidence of (1) a confidential or fiduciary relationship; (2) an express or implied promise; (3) a transfer in reliance on such a promise; and (4) unjust enrichment." *Martha Graham Sch. & Dance Found. Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 380 F.3d 624, 646 (2d Cir. 2004).

merely a contractual, as opposed to fiduciary, relationship." *McCaffery*, 2012 WL 3260299, at

*5. *See also Stadt v. Fox News Network LLC*, 719 F. Supp. 2d 312, 323 (S.D.N.Y. 2010) (failure

to adequately plead a fiduciary duty barred claim for an accounting); *Faulkner v. Arista Records*

*LLC*, 602 F. Supp. 2d 470, 484 (S.D.N.Y. 2009) (because "no fiduciary relationship exists

between these Parties, Plaintiffs' claim for a constructive trust fails as a matter of law.")

Plaintiffs' failure to adequately allege a fiduciary relationship is ultimately fatal to their claims

for breach of fiduciary duty, accounting, and constructive trust.

### d.  Unjust Enrichment and Money Had and Received

Plaintiffs' last two claims are for unjust enrichment and money had and received.  The

Court concludes both that these two causes of action are not barred by Plaintiffs' other claims

and further that Plaintiffs have adequately stated a claim for each pursuant to Rule 12(b)(6).

While a plaintiff may generally allege breach of contract and unjust enrichment

simultaneously, *see Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 347 F. Supp. 2d 1, 4 (S.D.N.Y.

2004), the "existence of a valid written contract generally precludes proceeding on grounds of

unjust enrichment . . . unless there is a bona fide dispute over the existence of the contract or the

contract does not cover the dispute in question." *Barbagallo v. Marcum LLP*, 820 F. Supp. 2d

429, 443 (E.D.N.Y. 2011). *See also Sabre Int'l Sec., Ltd. v. Vulcan Capital Mgmt., Inc.*, 95

A.D.3d 434, 438-39 (N.Y. App. Div. 2012).  Similarly, plaintiffs may not pursue unjust

enrichment claims "if such claims are based on an oral agreement that is barred by the Statute of

Frauds." *Thiam v. Am. Talent Agency, Inc.*, 11-cv-1465 (GBD), 2012 WL 1034901, at *5

(S.D.N.Y. Mar. 27, 2012).

In this case, no written contract exists to bar Plaintiffs' unjust enrichment claims and the

parties dispute the existence of an oral contract.  Construing the pleadings most favorably to the

Plaintiffs, it is at least plausible that the oral agreement alleged by Plaintiffs would not be voided by the Statute of Frauds, particularly in light of the lenient interpretation New York courts have adopted regarding whether contracts are capable of performance within one year. *See Cron*, 91 N.Y.2d at 366. Accordingly, the breach of contract claims do not bar Plaintiffs from proceeding with their unjust enrichment claim.[4] *See Maalouf v. Salomon Smith Barney, Inc.*, 02-cv-4770 (SAS), 2003 WL 1858153, at *7 (S.D.N.Y. Apr. 10, 2003) (party "may still have a claim for unjust enrichment in the absence of a governing contract. The fact that [Plaintiff] may only *recover* on one claim, either contract or quasi-contract, certainly does not preclude him from *pleading* unjust enrichment in the alternative.").[5]

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006). The Defendants do not seem to dispute that

---

[4] The Federal Rules expressly allow for pleading in the alternative. *See* Fed. R. Civ. P. 8(d)(2). However, Plaintiffs may not plead *facts* in the alternative. *See Astroworks, Inc. v. Astroexhibit, Inc.*, 257 F. Supp. 2d 609, 616 (S.D.N.Y. 2003) ("A complaint may not allege inconsistent *facts—e.g.,* whether there was an agreement—because facts are binding judicial admissions."). Indeed, "[f]actual allegations alone are what matters," and what determine whether a pleader has made a binding admission. *Albert v. Carovano*, 851 F.2d 561, 571 n.3 (2d Cir.1988) (en banc). The Plaintiffs amended complaint, while opaque, is not inconsistent about whether or not a contract existed. Rather it pleads alternative legal theories, which "may be pled . . . even if the alternatives are wholly contradictory." *Astroworks, Inc.*, 257 F. Supp. 2d at 616.

[5] The Court is aware of the fact that the New York Court of Appeals has cautioned that "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012). Federal Courts within New York have cited *Corsello* in dismissing unjust enrichment claims that were largely duplicative of breach of contract or other tort claims, but only in cases where plaintiffs were allowed to proceed with at least one of their contract or tort claims. *See, e.g., Yang Chen v. Hiko Energy, LLC*, 14-cv-1771 (VB), 2014 WL 7389011, at *7 (S.D.N.Y. Dec. 29, 2014) (unjust enrichment claim dismissed as duplicative of breach of contract claim that survived dismissal); *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F.Supp.3d 467, 483 (S.D.N.Y. 2014) (unjust enrichment claim dismissed as duplicative of breach of warranty claim which survived dismissal); *Installed Bldg. Products, LLC v. Cottrell*, 13-cv-1112 (ASC), 2014 WL 3729369, at *12 (W.D.N.Y. July 25, 2014) (dismissing unjust enrichment claims as duplicative, but only to the extent Plaintiffs were able to succeed on their tort or contract claims).

the Plaintiffs have established a *prima facie* case of unjust enrichment. Through receipt of the initial $315,000 lump sum payment in 2004, and the right to her parents' share of the proceeds from the sale of the 26th Street Property, Tracy undoubtedly benefitted at the expense of the Plaintiffs. Moreover, taking as true the allegation that Tracy indicated to Margaret that her name would be included on the title to each subsequent property, equity and good conscience do not allow for Tracy to retain this unearned benefit. Accordingly, Plaintiffs have adequately stated a claim for unjust enrichment.

Plaintiffs' money had and received claim survives for the same reasons. Money had and received requires that the "(1) defendant received money belonging to plaintiff; (2) defendant benefitted from the receipt of money; and (3) under principles of equity and good conscience, defendant should not be permitted to keep the money." *Panix Promotions, Ltd. v. Lewis*, 01-CV-2709 (HB), 2002 WL 122302, at *2 (S.D.N.Y. Jan. 22, 2002) (citing *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat. Ass'n,* 731 F.2d 112, 125 (2d Cir. 1984)). In New York, the "causes of action for unjust enrichment and money had and received are identical." *Maxus Leasing Grp., Inc. v. Kobelco Am., Inc.*, 504-cv-518 (FJS) (DEP), 2007 WL 655779, at *5, n.15 (N.D.N.Y. Feb. 26, 2007) (citing *In re Estate of Witbeck*, 245 A.D.2d 848, 850 (N.Y. App. Div. 1997)). *See also J.C. Penney Corp. v. Carousel Ctr. Co., L.P.*, 635 F. Supp. 2d 126, 129 (N.D.N.Y. 2008) ("claims for unjust enrichment and money had and received are identical"). Although effectively identical, "the plaintiff may properly plead unjust enrichment and money had and received as alternative claims to the breach of contract claim." *Robert Smalls Inc. v. Hamilton*, 09-cv-7171 (DAB) (JLC), 2010 WL 3238955, at *6 (S.D.N.Y. July 19, 2010) *report and recommendation adopted,* 09-cv-7171 (DAB), 2010 WL 3238963 (S.D.N.Y. Aug. 11, 2010). *See also Hoyle v. Dimond*, 612 F. Supp. 2d 225, 231 (W.D.N.Y. 2009).

In sum, Plaintiffs are able to make a *prima facie* case for both unjust enrichment and money had and received.  Their claims are not duplicative in light of the fact that the existence of the contract is disputed.  Were Plaintiffs, hypothetically, able to recover on another claim rooted in the same facts, only then would these claims become duplicative.  *See, e.g., Cottrell*, 2014 WL 3729368, at *12; *Maalouf*, 2003 WL 1858153, at *7.

### e.  The Claims Against Jennifer Almazan Are Dismissed With Prejudice

Finally, the Court dismisses every single one of Plaintiffs' claims as against Jennifer Almazan.  Plaintiffs' complaint is utterly bereft of a single allegation against her.  Similarly, Plaintiffs' opposition not only fails to oppose Defendants' request to remove her from the case, but in fact neglects to reference Jennifer altogether, save for only the most perfunctory references.  Accordingly, all ten claims against Jennifer Almazan are dismissed with prejudice.

## IV.   CONCLUSION

In conclusion, Defendants' motion to dismiss is GRANTED in regards to Plaintiffs' claims for breach of contract, fraud, fraudulent concealment, breach of fiduciary duty, accounting, and constructive trust.  It is DENIED in regards to Plaintiffs' claims for unjust enrichment and money had and received.  Furthermore, all claims are dismissed, with prejudice, as against Jennifer Almazan.  An Initial Pretrial Conference shall be held on March 6, 2015 at 10:30am in order to set a schedule regarding Plaintiffs' remaining claims.

This resolves Dkt. No. 24.


SO ORDERED.

Dated: February ___ 2015
      New York, New York

ALISON J. NATHAN
United States District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: FEB 0 4 2015